# Third District Court of Appeal

## State of Florida

Opinion filed September 16, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-2255
Lower Tribunal No. F22-12039
_____

**Jorge Alberto Torolopez**,
Appellant,

vs.

**The State of Florida**,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, William Altfield, Judge.

Carlos J. Martinez, Public Defender, and Amy Weber, Assistant Public Defender, for appellant.

Ashley Moody, Attorney General, and Magaly Rodriguez, Assistant Attorney General, for appellee.

Before EMAS, FERNANDEZ and BOKOR, JJ.

<u>ON SECOND EMERGENCY MOTION TO REVIEW ORDER DENYING POST-TRIAL RELEASE</u>

BOKOR, J.

Jorge Torolopez brings this second emergency motion under Florida Rule of Criminal Procedure 3.691 seeking review of the trial court's second denial of supersedeas bond following his convictions for aggravated assault and battery. Previously, this court granted relief to Torolopez, concluding that the trial court did not properly consider the factors outlined in Rule 3.691 and Younghans v. State, 90 So. 2d 308 (Fla. 1956), in its first order denying supersedeas bond, and remanded for further proceedings. Torolopez v. State, 49 Fla. L. Weekly D1666 (Fla. 3d DCA Aug. 6, 2024) (Torolopez I). On August 14, 2024, after a hearing, the trial court entered a second order denying Torolopez's motion for a supersedeas bond. After a thorough review, we conclude that the trial court's second order suffers from similar infirmities to its first order.

> To recap from our prior decision:
>
> [F]ollowing a jury trial, Torolopez was convicted of one count each of aggravated battery, aggravated assault, and improper exhibition of a weapon. He was sentenced to five years in prison followed by three years of probation. Prior to trial, Torolopez remained free on bail for over a year without violating any conditions of his pre-trial release. He also had no prior criminal record.

Id. at *1. In its second order denying post-trial release, the trial court acknowledged the applicability of Younghans and Rule 3.691(a), which require the court to consider the following factors:

> (1) whether the appeal is taken for delay or in good faith on grounds not frivolous but fairly debatable; (2) the habits of the individual regarding respect for the law; (3) local attachments to the community by way of family ties, business or investment; (4) the severity of the sentence imposed, and circumstances relevant to the question of whether the defendant would remove himself from the jurisdiction of the court.

Wells v. Wainwright, 260 So. 2d 196, 197 (Fla. 1972). The trial court's decision "must be exercised within the guidelines established by case law and adopted by court rule." Kelly v. State, 362 So. 2d 945, 947 (Fla. 1978). "In any case in which the court has the discretion to release the defendant pending review of the conviction and, after the defendant's conviction, denies release, it shall state in writing its reasons for the denial." Fla. R. Crim. P. 3.691(b). As we explained:

> A trial judge fails to satisfy this requirement by "merely making conclusory findings unsupported by the record" or giving a "'mere verbatim recital of the considerations of Younghans.'" Baptiste v. State, 134 So. 3d 1025, 1026 (Fla. 4th DCA 2012) (quoting in part McCormack v. State, 338 So. 2d 208, 209 (Fla. 4th DCA 1975)). Here, the trial court's findings were insufficient to satisfy Rule 3.691(b), because they were either conclusory, not supported by the record, or relied on an incorrect interpretation of the legal standard. The trial court possesses significant discretion in determining whether to grant a supersedeas bond, but such discretion must be based on the record evidence and permissible inferences, after a full examination of the Younghans

3

factors. See Carnright v. State, 387 So. 3d 1202 at *2 (Fla. 3d DCA 2022) ("A grant or denial of supersedeas bond is within the trial court's discretion, though that discretion must be exercised within the limitations established by Younghans and Rule 3.691.").

Torolopez I, 49 Fla. L. Weekly D1666 at *1.

Here, the trial court correctly concluded that Torolopez met the first factor for filing the appeal "in good faith on grounds not frivolous but fairly debatable." Wainwright, 260 So. 2d at 197; see also Ruiz v. State, 238 So. 3d 880, 883 n.2 (Fla. 3d DCA 2018). Next, the trial court examined "the habits of the Defendant regarding respect for the law." The trial court noted that Torolopez was previously arrested for battery, which case "was ultimately Nolle Prossed." Further, when police officers arrived on the scene to investigate the crime giving rise to the charges here, the trial court noted that Torolopez "was uncooperative, loud and irate requiring the police officers to handcuff" him. Finally, the trial court noted that during the trial, Torolopez sighed loudly during the police officer's testimony and testified that the witnesses were lying. These instances caused the trial court to conclude that Torolopez "displayed a lack of respect for the justice system." We examine each of these issues.

Regarding the prior charge, ultimately nolle prossed, Torolopez correctly argues that the record does not contain sufficient detail of that

4

single charge, or reasons for its dismissal, to use that as a basis for a conclusion that Torolopez showed disrespect for the law. See Robinson v. State, 201 So. 3d 666, 668 (Fla. 3d DCA 2016) (finding that "a conviction 22 years ago for 'assault or battery and disorderly conduct,' and to an adjudication withheld battery charge from 2010 . . . falls short of evidencing a habit of disrespect for the law over [defendant's] 50 years of life"); see also Lundy v. State, 995 So. 2d 982, 983 (Fla. 1st DCA 2007) (holding that defendant who was a first-time offender, in mid-60's, and always appeared for court while on pretrial release supported post-trial release).

Regarding the sighs at trial during witness testimony the specific facts do not support the trial court's finding of lack of respect for the justice system. The record reflects that this criminal trial was Torolopez's first encounter with the court system, and upon being instructed at sidebar, Torolopez obeyed and refrained from any further outburst. The trial court also concluded that Torolopez's statement on the witness stand that the other witnesses were "liars" evinces a lack of respect for the justice system. Although we do not substitute our judgment for the trial court's conclusion of "overwhelming evidence of the Defendant's guilt," the testimony shows at least a colorable dispute over what the witnesses saw and whether the victim approached Torolopez first. On this record, Torolopez's maintaining his innocence at trial,

5

coupled with a statement calling the witnesses "liars," don't rise to the level of mendacity demonstrating disrespect for the justice system.

Next, we examine the trial court's finding that Torolopez "was uncooperative, loud and irate requiring the police officers to handcuff" him. Context matters here. The trial transcript referenced in the trial court's order contains testimony of the police officers that Torolopez was "agitated and kind of amped up, kind of being loud." The officer that placed Torolopez in handcuffs noted that Torolopez "may be . . . frustrated, trying to get out this story. He did seem to get louder and louder . . . .[H]e appeared to be irate, which is upset." So the officer decided to detain Torolopez "to deescalate everything" to allow the investigation to continue and get the full story from all parties. The officers also testify that "[e]ventually he started to calm down. It took a little while." He started to speak with the officers. He continued to speak after having his <u>Miranda</u> rights read to him. We do not quibble with the trial court's conclusion that Torolopez's behavior could be classified generally as "uncooperative, loud and irate," at least at first. But a review of the context of the detention and the fact that Torolopez calmed down and spoke with officers, even after being given a <u>Miranda</u> warning, evinces that this is not the type of conduct that could ground on its own and without more, a conclusion of a lack of respect for the legal system.

6

The most significant basis relied on by the trial court in denying bond, the determination of insufficient community ties, relies on an incorrect factual basis and deviates from the legal standards governing this analysis. While we review the findings of fact for abuse of discretion, the trial court's analysis of the relevant law is reviewed de novo. On the facts, the State concedes in its response to the motion that the trial court incorrectly concluded that only Torolopez's mother and one half-sister lived in Miami-Dade County, noting that another half-sister lives in Miramar in Broward County. Importantly, on the law, the trial court appears to conclude that the ties to a community within Florida, but outside of Miami-Dade County, couldn't suffice to establish local attachments to the community. The State cites to Mehaffie v. Rutherford, 143 So. 3d 432, 434 (Fla. 1st DCA 2014), to support the trial court's conclusion that Torolopez's ties to Cocoa Beach couldn't provide the requisite local attachment to the community. In Mehaffie, according to the State, the appellate court affirmed denial of bond because "defendant introduced evidence only of his ties to his community in Valdosta, Georgia instead [of] to the Jacksonville community." The State's inference is that the appellate court affirmed because local means only the same judicial district. Had the State continued with the relevant context in Mehaffie, however, it would reveal that the court affirmed the trial court's finding because:

7

Mehaffie is a flight risk given that Mehaffie has no ties to the Jacksonville community or even to the State of Florida. . . . He presented no evidence of ties to the Jacksonville community or even to the State of Florida; rather, he introduced evidence only of his ties to his community in Valdosta Georgia.

Id. This is a fact-specific inquiry, but the facts here differ from Mehaffie. Here, Torolopez demonstrated unrebutted ties to the Miami-Dade community as well as to the State of Florida. The unrebutted record contains local ties to Miami-Dade County as well as significant ties to Cocoa Beach—both communities in Florida. Based on this specific record, including his ties to Miami-Dade, his significant connections to Cocoa Beach, and Torolopez's history of full compliance and attendance at all court hearings, Torolopez demonstrated sufficient ties to the local community.[1]

---

[1] While arguing that Torolopez's familial connections to the Miami area are insufficient (while conceding that Torolopez has one more half-sister living here than the trial court listed), the State agrees that Torolopez has significant ties to Cocoa Beach. The State makes an argument that the ties to Cocoa Beach are irrelevant because that's not Miami-Dade County and is "outside the reach of the Eleventh Judicial Circuit of Florida in and for Miami-Dade County." But the State provides no legal basis for that contention. For example, an arrest warrant or writ of bodily attachment is valid statewide. Torolopez has ties to Miami-Dade County, and unrebutted, significant ties to the Cocoa Beach area. The unrebutted record evidence shows that he made every court appearance while living in Cocoa Beach with his wife and child. In sum, there are certainly situations where connections to another part of the state would be insufficient. That's not established on this record. To the contrary, the record reflects the presence of additional local family members, including a nephew who appeared in court and business interests in South Florida that are not referenced in the trial court's discussion of ties to the community. Put another way, there's nothing in the record from which the

8

Finally, the court considered the nature of the crime and sentence imposed, five years, in determining that "[t]his is not an insignificant sentence and, without ties to this community, does provide incentive to flee." But the charges for which Torolopez was convicted are eligible for bond. If the nature of the crime alone were sufficient to deny bond, it would render the fact finding and application of the Younghans factors irrelevant. And as explained above, the record establishes Torolopez's ties to the community, and the five-year sentence, in and of itself, isn't of sufficient length to justify denial of a supersedeas bond on that basis alone. See Baptiste, 134 So. 3d at 1027 (finding that a mandatory minimum five-year prison sentence in and of itself "is not conclusive of whether [the defendant] presents a flight risk"); Lundy, 995 So. 2d at 983 (noting in dicta that a six-year sentence was not "particularly lengthy"); Spencer v. State, 284 So. 2d 229, 230 (Fla. 3d DCA 1973) (noting that trial court should consider bond in light of actual sentence of "only seven years imprisonment" rather than possible life sentence that wasn't imposed).

We understand the trial court's concern with the fact that Torolopez was convicted of two violent felonies and a misdemeanor, resulting in a

trial court could have concluded that Torolopez didn't have sufficient ties to the community.

9

prison sentence. But, at its essence, that's all that the trial court relies on to deny the relief requested. While the nature of the offense may be a factor the trial court considers, it must be grounded in specific facts and reasonable inferences. To conclude that the conviction for such an offense itself, without an examination of any facts relevant to the required Younghans analysis, would be akin to denying bond simply because of the conviction itself. See Ruiz, 238 So. 3d at 882 (noting that the fact that a jury found Ruiz guilty "necessarily applies to every single defendant requesting a supersedeas bond").

Constrained by the Younghans factors, on this record before us, the trial court would have been compelled to grant an appropriate supersedeas bond. We therefore grant Torolopez's emergency motion and remand for the trial court to set an appropriate bond. The hearing to determine the amount and relevant conditions shall be conducted within seven days of the effective date of this opinion. This opinion shall take effect immediately, notwithstanding the filing or disposition of any motion for rehearing.

Motion granted; remanded for proceedings consistent with this opinion.